Good morning, your honors, and good morning, Mr Duarte. It's a pleasure to be here this morning, even arguing from my den, as it were, a little bit of a unique way to get started. But man, where's that? I live in Austin, Texas, but I'm a Shreveport native. That's not gonna get you anywhere, Mr. Johnson, you dropped that in, but it ain't gonna help you. I understand, just know my old ears did catch it, but it's not going to help you. So go ahead, you're in Austin, go ahead. I understand. May it please the court. While this may be a case of first impression at this court regarding the effect of a standard of care language in a contract in a prescription analysis, the notions of freedom of contract and holding parties accountable to the language that they choose to put in a contract certainly are not, nor are the number of maxims of Louisiana law that have been adopted by this court related to prescription that established that the plaintiffs have stated a valid breach of contract claim, entitling them to a 10 year statute of limitation. In this case, Regions is asking this court to ignore the plain language and the obligations contained in its own contract. We would submit that equity, freedom of contract, enforceability of contracts, the express allegations of the complaint and established principles of Louisiana law leave no doubt, but that region should be held to the terms of its own contract and responsible for the devastating conduct. Excuse me, the devastating consequences that their actions had on my client. Let me ask you, Mr Johnson, I'm looking at there's two complaints, right? There's the two separate cases that are now in front of us. I don't see in either one. It's strange. You don't even there's no cause of action alleged in the complaint. I mean, there's all the factual detail. But a complaint usually then gets to, you know, negligence or breach of contract or, or breach of fiduciary duty. And I don't see those words for any claim anywhere in the complaint. What's what's the story with that? Understood, Your Honor. And the in both complaints, both for the Franklin and the parents and for the and for Miss St. Marceau, particularly for the Franklin and parents, we did set forth or it was set forth in the complaint. I came in later. But it was set forth in the complaint, the actual contractual terms. I see that in paragraph five, I see those two parts of the even there, it sets out what the contract says. It doesn't anywhere in the complaint say that those provisions were violated or breached at least at least directly. It doesn't say that, which which isn't too hard to say. Understood, Your Honor. And it does go through in detail. It mirrors the sort of failures that the Louisiana Supreme Court found with respect to regions which we would contend or or the breach allegations in the case. And regions obligated itself to well, backing up. So regions chose to contract with plaintiffs. They chose the terms of the contract. And the fact that they did that has consequences on two levels. The plaintiffs allegations in this case arise from a contract that gives rise to a personal obligation and a 10 year statute of limitations. That's made clear by in most recently in Smith versus Citadel from the Louisiana Supreme Court, which states that obligations flowing from a contractor personal in nature and subject to a 10 year statute. Further, regions included those two specific contractual provisions, one a standard of care clause into a promise to perform that obligated itself to manage and supervise all of the plaintiff mineral interest and to do with them what is customary and this of the for the same kind of the same locality. Then they also promised to execute, acknowledge and deliver all oil, gas and mineral leases containing such terms as the bank deems proper. If it turns of those contracts, we've alleged the breach entitling us to the 10 year statute. And while this court might have never directly addressed this issue, it has passed on this issue before in the Louisiana pigment case, which was decided by Judge Trimble, which was affirmed by this court on appeal. In that case, Judge Trimble found that the contractual language control. In that case, there was a breach of contract, but the defendant came in and said, No, this is not a situation. This is not a breach of contract. Judge Trimble rejected that approach and applied the 10 year statute, applied the 10 year statute, finding that the actual language, which is similar to the language contained here, which was that foundation systems will perform its services in accordance with the standards of care and diligence normally practiced by recognized firms and performing similar services. Judge Trimble found that that controlled that contractual language controlled and that the claims were based in contract. In contrast, we get a pigment. We contend is on point and Judge Trimble's analysis is proper and regions did not cite to one single case in their briefing where there is an explicit standard of care contained in a contract where those terms have been sued upon and the claims were found to be delisted. When you combine the holdings of Smith and Louisiana pigment and the facts of this case, we believe it clearly gives rise to a 10 year statute of limitations for on two levels. First, from a personal obligation arising from the contractual relationship itself at the Smith and also the breach of the express terms as such in Louisiana pigment. There shouldn't be any dispute in this case that we've pointed out that both of the clauses in this contract were breached. We've stated the specific provisions in the contract. Mr. Johnson, so I understand your argument that there's a, the contract itself had a standard of care. And you allege that in the one case, but what about the case with the oral contract? There's there's no allegation in that complaint about what the oral promises were, or that it contained this type of standard of care language. So just assuming arguendo, we were to agree with you, where does that leave what the the Marku case with the oral agreement? It agrees that we do have sort of two different animals here on some level, Your Honor, but for purposes of this appeal, the district court made no such distinction. And then if we're able to go back to the district court, I have no doubt that Miss Duarte and her and her talented group of colleagues are going to make an issue of that. But we believe that Miss St. Marcel because she was so closely associated with the contract that was actually issued in the case, the only distinction between the relationship between the Regents and the Franklin and Perinet plaintiffs and Regents and Miss St. Marcel was that Miss St. Marcel actually just signed her leases herself. Regents offered her the same advice for the undivided for the exact same property, their undivided coextensive owners of a mineral interest. And so I have no doubt that that will eventually come up. But for purposes of this appeal, we will certainly advocate if we are able to at a later date, that they should continue to be treated the same. And I do think it's important to note that the magistrate in the record in page 873 did find that we had stated R&R did find that we had stated an appropriate cause of action for breach of contract. She said the court observes that plaintiffs recited in their complaints specific contractual provisions, which regions arguably breached. These allegations are sufficient, at least in the present context, to set forth a timely claim for breach of contract. Ultimately, we obviously came to a different conclusion. But we believe that that was that she was right the first time because it isn't that finding is in harmony with Smith. It's in harmony with this finding this court's affirmative pigment. It's in harmony with black letter principles of Louisiana law is adopted by the circuit and with the weight of the jurisprudence on this topic, which has been set forth by plaintiffs in our group. What was the circumstances of her changing her mind? Was that was an argument at our conference or your honor, what happened was is they originally brought a motion to dismiss under the Louisiana credit agreement statute, which was declined. They objected. Then the the court made that notation in the in its report and recommendation about the closer question being x contract to versus x delicto. They regions then objected, making that the principal issue. The district court remanded the matter back to the magistrate for purposes of trying to resolve that issue. And so it was it was almost to a sponte raised by the court if that answers your question. That was a reminder with instructions are just remanded. No, ma'am. It was just sent back to the district for excuse me, just sent back to the magistrate for consideration of that issue. Okay, so the issue never really came up until that until the report and recommendation was issued itself. And your honor, I see where my time is is getting lower. But I just wanted to talk a little bit about the maxims of Louisiana law, which are expressed in Louisiana, which have been adopted by this court, which all favor maintaining the plaintiff's claim. In this case, it's established and has been adopted by this court that a prescriptive period is to be strictly construed against prescription and favor of the obligation sought to be extinguished for the reasons like we've been discussing the magistrate originally finding that a breach of contract claim had been made and then finding that it wasn't. We contend as evidence that we did not receive the benefit of that strict construction. It's also established that if there are two possible constructions of a claim, the one that maintains the action should be adopted. In this case, there clearly were two different ways to see the magistrate herself found that there were two different ways to see the case. And we believe that that that in conjunction with this well established maximum Louisiana law favors maintaining our claim. And again, courts, this court has noted many times that and bringing all up from Louisiana, the court will treat an act as delictual, unless a violation of a contract has been alleged. This court has repeatedly done that Babin versus quality energy were shard versus Walmart Valley as well. We've alleged the specific contract contract with terms that were breached, we've attached the operative contract to the complaint. And the magistrate initially found that we had actually done that quote, plaintiff recited in their complaints specific contractual provisions, which regions arguably breached. We believe that this also favors maintaining our claim. And again, this court has noted this maximum Louisiana law that prescription is strictly jurors and cannot be extended from one action to another nor to analogous cases. We would submit to this court that that's exactly what happened in this case. The magistrate clearly extended Roger by analogy to cover this case, finding that she was quote confident the approach taken by Roger and Copeland should be followed in quote by this court, because of the quote similarities in professions, despite having noted herself only a few sentences before that quote, the undersigned is well aware that other Louisiana cases, even in analogous context, have permitted plaintiffs to assert a breach of contract claim under the circumstances where the guarantee or warrant a specific result. We would contend that the extension of Roger by analogy in this case is improper. These premises all dovetail with the overwhelming amount of Louisiana jurisprudence set forth in our brief in our brief, which favor the finding of an application of 10 year limitation period in this type of an instance, and moving away from the these type of maxims for a moment and to get to judge Stewart's point about a good old Louisiana Civil Code case in Louis in Civil Code 3471. It's not allowed in Louisiana to shorten a prescriptive period by contract. And we contend that what regions is doing here is they're trying to do something indirectly that they can't do directly. Regions chose to put this type of contractual language in their in their contract. And then when those terms are breached, and those terms are sued upon those express terms are sued upon, then they come in and say, No, this is this is delictual. We can't you can't do this. It's a one year statute of limitations and we should win. They're doing exactly what indirectly what Louisiana Civil Code 3471 says that they can't do directly. And lastly, I just want to address briefly before we go the fact that we would contend that it is just simply plain error for the addressed at all our request to amend in the event we were unsuccessful in the motion to dismiss phase. Um, there were no this was a bizarre procedural posture in court case had a very bizarre procedural posture. We actually in on page 10 66 of the record, which would be our objection to the magistrate's second report and recommendation, we did ask for an opportunity to distinguish our case from Roger, which we contend allowed to be one of the circumstances if the court does not agree with us on the central issue in the case. And in in conclusion, Louisiana law favors redress ability. A proper contract has been pled in this case, and regions should not be allowed to escape its inexcusable lack of elementary prudence or simple diligence through contractual sleight of hand. Thank you for your time. All right. Thank you, Mr Johnson. All right, Mr Duarte. We'll hear from you. Might help if I unmuted myself before I told you that I'm here on behalf of defendant Appellant Regions Bank. Um, it's a challenge in the zoom world. I'm working on it, and I think Miss Engelhardt for getting my last name on the screen. Um, in a big picture, this is an action by mineral owners against their mineral manager and mandatory for breach of the standard of care in its execution of a lease agreement. And I don't think there's any dispute about that. When you look at the plaintiffs, um, briefing both on the original and in their prime brief, they're talking about standard of care. Um, we have two issues before the court. The main issue is whether the 12 B six dismissal was proper, um, based on the fact that this was or based on the finding that this action sounds in tort rather than contract. And the second issue is whether the district court abused its discretion by not allowing the plaintiffs opportunity to amend. So with respect to that first issue, this is not new ground in many respects for this court. I understand from my research that everyone on this panel has been on a prior case in this circuit dealing with the contract tort distinction in some fashion under Louisiana law. So at kind of background principles are familiar to the court. Um, and I'm gonna kind of jump to what I see as the heart of the case. Jumping off from where Mr Johnson ended his argument, he ended his argument, saying that plaintiffs are alleging a specific contractual provision, a breach of a specific contractual provision that takes them out of the delictual liability rule. So really, the heart here is whether the alleged and attached to the complaint constitute that kind of specific contractual provision that will elevate a standard of care type of case to a contractual claim that will support a 10 year prescriptive period. Now, what Mr Johnson didn't talk about is that there is a specific rule that governs that inquiry in the context of professional negligence cases. The case that he cited on the standard of care issue as incorporating a standard of care sufficient to make it contractual is not a professional negligence case. So we are telling the court and we're asking the court to apply the rule that in the specific context of professional negligence, the only kind of specific contractual provision that will support a contract claim is an express guarantee of result. And that's the bottom line of what we're suggesting the appropriate rule is in this case. And I can explain to the why is this a professional negligence case? I mean, most of those attorneys, accountants, you have a cause of action against them independent of even needing a contract, a doctor malpractice against the doctor. Here, it seems to me, I mean, it's only because of the contract, right, that there'd be any, any, any claim here. I think it's theoretically possible that you could have a case like this without a contract. Because as I understand it, mandate or agency could exist on the basis of something like a parent 40, absent a contract. Normally, I would agree with you, there will be a contract. But the same thing, what's your best case for saying this is within that world of professional negligence cases you're relying on? I would say probably Gerdes is our best case for saying that. And in that case, the court talked about attorneys and mandatories. That case involved, like the present case, an attorney, well, present case is an attorney involved an attorney who was also a mandatory. And by that, it means that the attorney had powers of attorney to make him an attorney in fact, and he actually signed the documents on behalf of the clients, in addition to advising them on going forward with the sale. The claim was was that the attorney, as a part of his mandate was required to inspect the collateral for the sale to ensure that it had value. Now, all the parties in the court agreed in that case that the legal malpractice aspect of those claims had already prescribed. So what this court was looking at in that case was whether under the mandatory kind of aspect of the case, what rule applied for the prescriptive period. And what this court said was, while a mandatory is a fiduciary, it doesn't necessarily follow that every action against a mandatory is subject to the 10 year prescriptive period. For example, because lawyers appear in a representative capacity, a general contract between an attorney and client is often considered a mandate under Louisiana law. So the court's basically saying that appearing in a representative capacity is like attorneys or mandate mandate is like attorneys, same kind of rule applies, same kind of professional rule would apply. Now, this case was decided a year before the Roger case. So the court isn't talking about Roger, the court isn't talking about the specific rule about expressed warranty of a result. At this stage, the court is talking about the duty of loyalty and the standard of care issue. But when Roger comes in the next year, Roger's talking about attorneys and similar professions. This court's extended that to financial advisors. The Rogers court extended that to insurance agents, right? So they're all in this kind of sphere of professional negligence. I think Gerdes helps get you there. And then I think you look at also the language that's in Roger itself, which this court approved and cited in Copeland, the nature of certain professions is such that the fact of employment doesn't imply a promise of success, but an agreement to employ ordinary skill and care in the exercise of the particular profession. What happened in this case could just have easily been done by a lawyer, right? They could have hired a lawyer to advise them on to have their power of attorney to sign for them. It's the same what if this what if we conclude otherwise that this is not in the professional malpractice world of cases, then, then where does that leave you? If it's not in the professional negligence world of cases, I would still say that probably the standard of care incorporation is not enough. But I will say that there is a case or two that says it is. So the court would have to decide then whether the incorporation of a standard of care under Louisiana law is sufficient to make it a contractual plan. But I believe that that in this case, this region's bank was doing the same thing that an attorney could have done its work is dependent upon its construction of Louisiana law. What kinds of clauses do these folks need in a particular contract to effectuate the result? What kind of financial situations will be how will their financial situation be bettered by the inclusion of particular provisions or even by leasing or not leasing? So it's just like a financial advisor, which has already this court has already held is in that professional negligence class. And it's just like an attorney, I don't really see that there's any difference, Your Honor, in terms of putting this court in the professional negligence rule. Now, when we look at that professional negligence rule, the courts are saying all the time, we're talking about implying a promise of success. No, that's not there. But what we do have is we have an agreement to employ ordinary skill and care. So they're talking about this in terms of these implied duties, or this type of an agreement to exercise skill and care. And simply having that implied agreement isn't enough as these cases make clear to get you into a contractual claim. Now, we've taken that one step further. Now the plaintiffs are saying, okay, well, it's not just implied, we have it expressly incorporated in our contract. And it's a standard of care provision. And it says you have to do what you would have to do anyway, which is be reasonably diligent. Now, we've cited the Varnado case, which is a case that we believe does address those express inclusions of a standard of care. And the court talks about that. It says at best, the evidence indicates that Raina, the attorney agreed to properly prepare an active sale for the parties. And then that did that this active sale would include the terms and conditions the parties agreed to between themselves, including a reservation of mineral rights. As such, Raina agreed to render to the parties professional expertise, and that degree of care, skill and diligence, which is exercised by prudent practicing attorneys. The evidence does not support a guarantee or warranty of anything additional to the exercise of that standard of care that would be required by all attorneys in any legal undertaking. And I think if you shepherd eyes that case, and you look particularly even at the Martinez case that was cited by the district court in the supplemental R&R. Again, there's a promise there that the attorney would perform the law. And the court held this promise, if proven, is a guarantee that Zoe Wong standard of performance would parallel that of a prudent attorney. And attorneys express promise to follow legal requirements is not a guarantee of a specific result. I don't know how you could say it more plainly than that. Another case Newsome versus booth, which is 524 Southern second 923. Louisiana court also applying Barnett. Oh, an implied duty of legal competence is present in every attorney client relationship and is not sufficient without evidence of a warranty to achieve a specified result to activate activate the contractual prescription. In that case, again, it was an incorporation of the standard of care and the court said no, it's not enough. So we have specific cases showing that in the context of professional negligence, it's not enough to incorporate a standard of care, you have to go farther. And that farther means you have to guarantee a result. You have to guarantee you're going to win a lawsuit, you have to guarantee title to property, you have to guarantee that you're going to do something and then do nothing. And in this case, clearly, regions did something regions executed the lease amendment. Supreme Court said they did it with negligence, essentially, but they executed it. So it's not a case where they promised something and didn't do anything. But they certainly didn't promise the result of this amendment would only extend the undeveloped acreage. There's no allegation of any kind of promise like that. It's simply an incorporation of a standard of care, which is not enough. Now, if you look back in the the Roger case, and you kind of click on all of the cases that the court cited there to show the derivation of the rule, what you'll see is more language talking about implied contractual duty, that with professionals, it's not an implied promise of success, but merely an implied standard of care. And this might answer help to answer your question, Judge Costa, the court talked about this, this Shaka case, CS, I'm sorry, SCI, a CCA, which is a 1981 Louisiana Supreme Court case. And that court said, unlike engineers, mechanics and shipbuilders, a physician does not simply undertake, simply undertake the treatment of a case, I'm sorry, a physician does not simply undertaking the treatment of a case contract with the patient for a specific result. So in this case, we're more like a physician, an attorney, financial advisor, and we are someone like an engineer or a mechanic or a shipbuilder who you expect you're going to get your house or your ship that doesn't collapse on you because the laws of physics are the laws of physics. Now, in all of those cases that the Roger court talks about, and that discussion of those kind of implied obligations, they're saying that implied obligation to follow the standard of care isn't sufficient to give you a contract. So why should an express one be any different. So what I'm suggesting is that that makes it consistent with the Martinez case, the new case, which expressly say that having that standard of care expressly incorporated in a professional negligence case does not get you to the specific contractual obligation necessary to support a contractual cause of action. Now, we talked already about Gerdes and that in the mandatory relationship, this court has applied the similar provision with respect to attorneys, not the rule of express warranty of result, because in Gerdes, the court was talking about duty of loyalty versus standard of care. But nevertheless, it said attorneys and mandatory mandatories are similar and have that similar duty of care issue. So I think once you take Gerdes and you take the professional negligence cases, including Roger, that gets us to where we are, which is, this is a breach of a warranty of result, there can be no contractual claim. Now, in this case, I don't think there's any dispute that the allegations relate to a standard of care. As I said, that's the language that's used even in the reply brief. That's the language that the Louisiana Supreme Court used in the Pirinei decision. So we are talking about a standard of care issue. And the contractual provisions that Mr. Johnson went through, don't go beyond that. They talk about managing and supervising interests doing there with what is usual and customary with property of the same kind and in the same locality. They also talk about to execute, acknowledge and deliver oil, gas and mineral leases containing such terms and provisions as the bank shall deem proper. That's it. We can read the rest of the contract that's in the record and in our record exhibits. And you'll see there's nothing else there. And there's nothing else that's been alleged, even during today's argument beyond those provisions. Now, as Judge Costa pointed out, in the St. Marceau complaint, we don't even have that. In the St. Marceau complaint, there's no allegation of any specific express contractual provision. So I would suggest that no matter what happens, in this case, Ms. St. Marceau's claim has to be affirmed, simply because she doesn't even attempt to get into the specific contractual obligation, jurisprudence rules. So with all that being said, where that gets us is that the one year prescriptive period applies. I don't think there's any dispute that if the one year period does apply, this case is prescribed. We had the Louisiana Supreme Court decision decided on June 28, 2013, stating in no uncertain terms that Regence was at fault and was negligent. Yet these actions were not filed until August of 2016, and August of 2017. So once you find, as we suggest that the court should, that the one year prescriptive period applies, this case and the decision of the district court needs to be affirmed, because there's no doubt that the actions are prescribed. Ms. Duarte, let me ask you something. Um, I think your argument is driven by the one year versus the 10 year. I understand what you want the answer to be. But I don't know why executing a lease without reading it is acting negligently. In other words, a misfeasance or a tort, rather than failure to act, failure to read it, which would be a nonfeasance or a contract. I just I don't understand what your answer is. My answer is that nonfeasance has been construed as doing nothing at all. And clearly, Regence did something. If Regence hadn't executed any lease documents on behalf of the plaintiff. Well, it was a failure to act, a failure to read. So that's doing... Or a misreading. I think that that's, respectfully, I think that that's too specific, Your Honor. I think that the question is, is there's no specific obligation for Regence to read, right, in the contract. There's an obligation for Regence... That's a frightening argument. That makes no sense. I understand that. But the obligation is a standard of care. And I'm not disputing that there was a breach of the standard of care. I'm not going to say that. Okay. The Louisiana Supreme Court's already said the opposite. So I'm going to accept that. Now, but it's a breach of the standard of care. It's not doing it well. It's not not doing it at all. Regence executed the amendment. They just didn't do it right in this case. That is a non... That is not a nonfeasance. That is a misfeasance. Now, if there are no further questions on that issue, I'll just briefly address the second point. And the second point is whether the district court erred, or I'm sorry, abused its discretion in not giving the plaintiffs an attempt to amend the petition or the complaints to add new claims or get around to the problem. Now, the basic argument here is that the plaintiffs are arguing that because the district court didn't give reasons, that that per se means that this course has to reverse because it's an abuse of discretion. There are cases that say that. But there are cases in this circuit that go on to do the analysis anyway, despite the fact that the district court did not give reasons. One of those is U.S. versus neighbor 256 Fed Appendix 669. That's a 2007 case. In there, the court said the district court did not provide reasons why it denied neighborly to amend. And nothing in the record indicates that anything like the accepted reasons justifying such a denial were present in the case. The court went ahead and looked at the futility argument at length. Ultimately, the court decided that it wasn't futile to give an opportunity to amend because the plaintiff had showed had established a prima facie case that he had a claim for attorney for ineffective assistance of counsel. So they let him but I read that case to say that this court has the power to go ahead and look at the futility argument to go ahead and look and see if there were sufficient reasons for the district court to have denied leave. And in this case, there are two reasons why the record shows there are sufficient reasons. The first is that still the plaintiffs haven't shown how they could include new allegations that would get them around the problem. So if the court agrees with us, that this is not a contract case, because the plaintiffs haven't shown any promise of result, a guarantee of result, they haven't shown anything they could allege to get around that problem. They haven't given us the proposed amended pleading, they haven't even stated what that would be. Second, that any attempt to amend would be futile, simply because we've already seen the contract. And the contract has only provisions that incorporate the standard of care, not a warranty result. So for both of these, it's discretion in denying to amend. Thank you very much for your time. All right. Any other questions of Ms. Duarte before we shift back? All right. Thank you. All right. Mr. Johnson, you have rebuttal. Thank you. I am glad I saved my five minutes. I might be a little scattered here, but I'm going to do my best to sort of this all together. First, with respect to the fact that we continue to refer to a standard of care, the answer, the reason why is very simple, because that standard, there's a standard of care language included in regions of the contract that it included. And I do take issue with the notion that there is, regions can include a standard of care in its own contract, but somehow then expect that they're not held responsible for that in contract. There's not a single case that says when you have a contractual obligation to perform according to a particular standard of care, that if that standard of care is breached, that it doesn't give rise to a contractual claim. That case doesn't exist. They included it in their complaint. They should be obligated to follow and be held to the consequences of what is in their complaint. We don't have to elevate and create something that doesn't exist in the contract. The fact that they every case that they talk about, Varnado and Gerdes included, there were not specific contractual allegations at issue were places where there were these cases didn't, I assume that they come out of a contract of a professional relationship. I know, at least in Gerdes, there was a mandate in that case, but nowhere in the mandate did it say that the employee was supposed to go check and physically make sure that there was the gravel pit and that it was up and running and appropriate. That didn't exist. It's not like this case, because in this case, there is a promise of performance in addition to the standard of care. That promise of performance is when region says that it will execute, acknowledge and deliver all oil, gas and mineral interest containing such terms as the bank deems proper. The lease in this case was not proper. That's a matter of record. That is a promise of performance. I will agree that the manage and the oil and gas interest from the as customarily done the first clause, I will agree that that is a standard of standard of care. But the second clause is in my estimation, and certainly in my client's estimation, that is a promise of performance. Okay, she's she's going hard on the professional negligence standard. So you better zero in on that. I was next on my list, Judge Stewart. So with the professional negligence cases, again, I would go back to the fact that we see in a pigment is a professional negligence case. That was the end, the claim was negligent, negligent performance of the duties and foundation systems was supposed to come in and there are sophisticated operations supposed to come in and be able to manage losing a pigments of energy bills and lower. That is a professional negligence case. The claim was and foundation systems came in and said, No, this is this negligent performance, we need to. This needs to be one year and Judge Trimble rejected that. For these all of these professional services cases that they that Mr. Warte refers to Gerdes, Varnado, Roger, not a one of them has an included standard of care. They would all be different cases if they all contain standard of care clauses, if they all contain specific performance requirements like this contract does. This time, this case completely apart from those other cases, hence my reference at the beginning to what I believe this case being a case of first impression. Um, and as far as the standard of review, I would just point out that regions has gone through and alleged that it is, it would be futile for us to amend our complaint. Once they allege futility, that then takes this court's standard of review back to a de novo standard. And that's Thomas versus Chevron from this court. I believe it's cited in both of our briefs as a matter of fact. So if the court is considering this with respect to futility, I don't think I think that it should be a de novo standard. And one last point with respect to what Judge is to find that there is that this is bound by the professional negligence standards in those cases, the promise of performance in this case and the abject failures to do that performance is what sets this, it's what could set this case apart. I know my time is out. Thank you for your time. It's been a pleasure and an interesting effort. Oh, thank you. All right, Miss Duarte, I forgot to ask you, where are you geographically situated? Like Mr. Johnson, I'm going to use his caveat as well. I came from New Orleans with Katrina. I'm in the Austin area like him. All right. All that makes both of you experts on Louisiana law. I'm sure. All right. Thank you for your it's one of the more robust 12 v six cases I've ever heard argued, I'll tell you that, you know, it's 12 v six and the arguments like it was a summary judgment case. But in any event, it is what it is. But thank you for taking Judge Clement and I down the civil code lane. But we will deep dive into the case and it's submitted and we'll get an opinion out. But we appreciate your briefing on it. And the oral argument does very helpful. So that concludes the oral arguments in our case. Thanks, both of you stay safe. See you again. Thank you, Your Honor.